## St. Louis, Vandalia & Terre Haute R. R. Co.
### v.
### Christopher Faitz.

Sealed verdict.—It is competent for parties to stipulate for the non-attendance of the jurors where a sealed verdict is opened and read in court, but a mere agreement for a sealed verdict does not have that effect nor deprive the parties of the right to have the jury polled. A rule of court as to sealed verdicts construed.

Appeal from the Circuit Court of Madison county; the Hon. Wm. H. Snyder, Judge, presiding. Opinion filed July 10, 1886.

Action by appellee to recover damages for the killing of two horses and the destruction of a wagon, caused by a collision at the crossing of a public highway over the railroad of appellant. The negligence charged in the declaration is the failure to ring the bell or sound the whistle as required by the statute. It appears from the record that on the day of the collision the plaintiff below and his son started to the timber to obtain firewood, each driving a team of horses attached to a wagon, the son driving in advance of the appellee. When the team driven by the son reached the railroad crossing, a locomotive belonging to appellant collided with it, killing the boy and horses and destroying the wagon. The appellee at this time was about two hundred yards from the crossing but in full view of it. The property destroyed belonging to the appellee, he brought this suit to recover for it. On the trial he recovered and the railroad company appealed.

Mr. JOHN G. WILLIAMS and Mr. FRANK B. BOWMAN, for appellant; that the court erred in refusing to poll the jury, cited Johnson v. Howe, 2 Gilm. 342; Rigg v. Cook, 4 Gilm. 352; Crotty v. Wyatt, 3 Bradwell, 389.

Messrs. KROME & HADLEY, for appellee; as to rules of practice, cited Beveridge v. Hewitt, 8 Bradwell, 473; Hinckley v. Dean, 104 Ill. 630; Pierce v. Hasbrouck, 49 Ill. 27; Koon v. Ins. Co., 104 U. S. (Otto) 107.

PILLSBURY P. J.    The testimony introduced upon the trial, upon the question whether the appellant was guilty of the negligence charged, and the servant of appellee exercised the care required, is quite conflicting, and as the case must again be tried at the circuit, we do not deem it advisable to enter into any discussion of its weight or credibility.

There was no claim made in the court below, neither is there here, that the appellee was guilty of negligence in trusting his son to drive the team.    So far as appears he was fully competent for such purpose.  Having put his son in charge of the team, he became responsible by relation for any negligence of his son contributing to the injury.    Three instructions were given for the plaintiff, the first stating the statutory duty of railroad companies in crossing highways, to which no objection is taken.    It is urged that the second instruction is open to the objection that it tells the jury that a failure to *both* ring the bell and sound the whistle continuously for eighty rods before crossing the highway constitutes a *prima facie* case of negligence. If the instruction could fairly be said to bear such construction, the objection would be well taken, but while, perhaps, it is not as clearly expressed as it might be in this regard, when considered with reference to the first one defining the duties of railroads, it could not be understood by the jury as containing the idea suggested.

The most serious objection to this instruction is the same as that to the third, which is as follows: "If the jury believe, from the evidence, that the injury com lained of was occasioned by a collision between the team and wagon of the

plaintiff and a locomotive engine of the defendant, on a public road, at a place where such road crossed the railroad of the defendant, and that the plaintiff used ordinary care and caution to avoid a collision, and that the collision was owing to the negligent, careless and unskillful manner in which the servants of the defendants managed the locomotive and train of cars attached, as charged in the declaration, then the jury should find a verdict for the plaintiff."

This instruction substantially ignores the question of contributory negligence upon the part of the *driver* of plaintiff's team, by making the test of liability of the defendant depend upon *its* negligence, and the care of the *plaintiff* to avoid the injury. As we have said, the plaintiff did no negligent act. The most that can be claimed is that the law, under the circumstances proven, charges the plaintiff with the effect of the driver's negligence upon the alleged liability of the defendant. It is not probable that counsel intended it as a proper statement of the law as to imputable negligence, and it is quite clear that the jury would not so understand it. They would very likely consider it as relieving them of the necessity of passing upon the question of the driver's care, or want of it, if they found the *plaintiff* had exercised ordinary care to avoid the collision. The same objection applies to the second instruction, which leads us to conclude that it was perhaps through inadvertence in writing the instructions that the care of the *plaintiff* was referred to as the test and not that of the servant; but the result of the error must be the same whatever the reason may have been for so drafting them. Exception was also taken to the action of the court in overruling the application of defendant for a continuance upon the ground of the absence of a material witness, resident of the State of Missouri. The testimony of the witness as shown by the affidavit was material to the issues involved, but in our opinion no sufficient diligence to obtain his deposition or attendance was shown, and no error was committed by the court in overruling the motion. Exception was also taken to the action of the court in refusing the defendant's request to have the jury polled upon the return of the verdict into court. It

appears from the special bill of exceptions, that when the verdict was returned into court there were only eleven jurors present, the other one being absent and reported to be sick, and upon opening and reading the verdict the attorney for defendant requested to have the jury polled, and the court refused the application, on the ground, as stated in the bill of exceptions, "that in case of a sealed verdict a polling of the jury was then and there not required," and against the protest of counsel entered the verdict of record. It also appears from the record that one of the rules of practice in that court provides that "an agreement on the part of counsel to receive a sealed verdict shall be considered and treated as a waiver of the right to poll the jury and to take any but substantial objections to the verdict; and it shall authorize the court to put the verdict in the proper form; and in all cases where a jury retires without objection to a sealed verdict on the part of either party, a sealed verdict may be rendered."

It was formerly the practice not to allow the jury to separate until their verdict was publicly announced in open court, and to compel them to agree they were frequently deprived of the necessaries of life during their deliberations; and if, before they had agreed, it became necessary for the court to leave the town where the case was being tried, the judges were not bound to wait for them, but might carry them around the circuit in a cart, although, as Blackstone quaintly observes, they are not to be threatened or imprisoned. A much milder and more humane practice has, however, been adopted by the courts of this country. Here, it is true, we do not permit them to separate until they have agreed, but in the meantime they are furnished with all necessary refreshments, and if in civil causes they agree during a temporary adjournment of the court, they can be directed, and frequently are, to seal their verdict and return with it into open court when it again convenes. This practice is called returning a sealed verdict, which is nothing more than putting their finding in writing and placing it in an envelope which is sealed, and when the court is again in session the jury come in and give their verdict, in all respects as if it had not been sealed, and a juror

may then dissent from it if, since the sealing, he has honestly changed his mind. Bouvier, title, Sealing of a Verdict.

It is not believed that in thus relaxing the strictness of such ancient rules any inconvenience has been suffered, or the administration of justice been made less satisfactory or less effective or certain. And, personally, I believe that the more confidence we repose in jurors as men of sound sense and capable of appreciating the individual responsibility resting upon them as arbiters in the cause submitted to them, the more we treat them as reasonable men, the better will they understand and perform their duties, and justice and right be advanced thereby. The verdict thus returned by the jury into open court is to be treated in all respects as though they had not separated. It was settled as early as Johnson v. Howe, 2 Gil. 334, that upon a verdict being returned by the jury, a party to the cause had the undoubted right to poll the jury, inquiring of them severally whether they agreed to the verdict announced, followed by Rigg v. Cook, 4 Gil. 336, that a *denial* of such right was error, and that it made no difference in this respect that the verdict was delivered sealed, and that a direction to the jury to seal up their verdict and separate does not dispense with the personal attendance of the jurors when the verdict is received, and if any of them dissent, the verdict can not be received. The case of Martin v. Morelock, 32 Ill. 485, was one where the parties stipulated that the jury, if they agreed, might seal their verdict, deliver it to the officer and separate, and upon presentation of a sealed verdict in open court, some of the jurors expressed dissatisfaction with it, on account of a mistake in computation, and the court directed them to retire and further consider of their verdict. The jury having reconsidered the assessment of damages, increased it, and the defendants assigned error upon this action of the court. The court held that the record did not disclose such a case as dispensed with the attendance of the jurors in open court when their verdict was received, and on their dissenting thereto the power of the court was unquestioned to compel them to again retire and reconsider it, notwithstanding their separation after they had agreed and sealed the verdict announced in

open court. And this upon the ground stated in Riggs v. Cook, *supra*, that until the verdict, although sealed, has been accepted by the court and recorded, the parties have the right to have the jury examined by the poll, and any of the jurors may, until so recorded, dissent from the former finding, and that the only verdict recorded is the final one. This right to have the jury examined by the poll is a legal one, of which the parties to this suit can not be deprived without their consent; and an agreement merely upon their part that the jury may seal their verdict and separate, does not dispense with their attendance when the verdict is received, nor deprive any individual juror of his power to dissent from the verdict thus agreed upon before separation, if he objects when opened and before it is recorded, upon being inquired of individually if the same be his finding in pursuance of such right thus vested in the party. But the law does not prevent a party from waiving such legal right to the presence of the jury when a sealed verdict is opened and read in open court, nor from depriving himself of the right to examine the jury by the poll ; accordingly it was held in Pierce v. Hasbrouck, 49 Ill. 23, that where the parties to the cause stipulated in open court that the jury might seal their verdict and deposit it in the hands of the officer to be delivered to the clerk and then separate and *not again return into open court*, it being the last day of their service, the delivery of the verdict to the clerk under such an agreement was tantamount to a delivery, and the court could render judgment thereon at that or the succeeding term of court. This case is distinguished in Bond v. Wood, 69 Ill. 282, from Rigg v. Cook, *supra*, in that it was competent for the parties to stipulate for the non-attendance of the jurors, when a sealed verdict is opened and read in open court, and the doctrine of the Rigg case re-affirmed that a mere agreement for a sealed verdict does not have that effect nor deprive the parties of the right to have the jury polled.

And the same rule is announced in the case of Griffin v. Larned, 111 Ill. 432. In this case no agreement was made for a sealed verdict; but no great stress should be placed upon this fact, as we have no doubt that the circuit court in civil

causes can, in case of a temporary adjournment from day to day, and where it is probable the jury may agree before the re-convening of the court, direct the sealing of the verdict and the separation of the jury in the meantime, returning into court such sealed verdict when again in session.    Yet, as we have seen, such direction does not deprive any party to the cause of his legal right to have all the jury present when such verdict is received, or of his right to examine them by the poll.    If the rule of court, incorporated into the record, providing that an agreement for a sealed verdict shall have the effect of precluding a party from the exercise of his right to poll the jury, is to be construed as a valid exercise of the power to establish rules of practice for the proper and orderly transaction of business in the circuit court, then it must be considered as referring to an agreement for the *permanent* separation of the jury after agreeing upon and sealing their verdict, thus making it harmonize with the Pierce case, *supra*, otherwise it can not but be held as depriving a party of a legal right secured to him by the law, as declared in the other cases above mentioned, without his consent, a power which we are not willing to concede is possessed by the circuit court, under the statute authorizing it to make, from time to time, all such rules for the orderly disposition of business before it as may be deemed expedient, consistent with law.    Section 69, Ch. 37, R. S.

No express agreement being made for a sealed verdict, and a separation of the jury permanently being shown by the record, if the case falls within any provision of the rule of court it must be under the second clause of it, providing that in all cases where a jury retires without objection to a sealed verdict on the part of either party, a sealed verdict may be rendered.    Conceding this portion of the rule to be valid, as being entirely consistent with the power of the court to direct a sealing of the verdict and a temporary separation of the jury, the failure to object to a sealed verdict is nothing more than an implied consent to such action of the court, and while waiving any objection to the return of the verdict, sealed by the jury after such separation, into open court, it can scarcely

be so construed as to operate as an express agreement that the jury should not be present, or as a waiver of the legal right to poll the jury. It goes no further than a consent to a sealed verdict, which, as we have seen, when returned into open court by the jury is to be considered the same as though it were delivered *ore tenus* by the foreman of the jury.

We hold therefore that it was error to refuse the appellant the right to demand the presence of the jury and to examine them individually whether they were still satisfied with the verdict.

For the reason stated the judgment will be reversed and the cause remanded.

Judgment reversed.