## East St. Louis Connecting Railway Company v. E. J. Eggmann, Administrator of Joseph F. Newland.

1. RAILROAD COMPANIES—*Actions for Personal Injuries—Evidence Insufficient.*—The court discusses the evidence, reverses the judgment and remands the case on the ground that the evidence is insufficient to sustain the verdict.

Trespass on the Case, for personal injuries. Appeal from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Heard in this court at the August term, 1894. Reversed and remanded. Opinion filed March 23, 1895.

CHARLES W. THOMAS, attorney for appellant.

JESSE M. FREELS and A. R. TAYLOR, attorneys for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

Appellant owns and operates a double-track railway in East St. Louis, extending north and south along the east part of the levee, on the east side of the Mississippi river, and by, on and along the west part or line of Front street, of the city of East St. Louis, with side tracks connecting its main track with the tracks of the different railroad lines terminating on the east side of said

Front street, and on the west side of its railway, it has, at the place where the injury occurred, side, or short tracks, extending from its main tracks down southwestwardly along the levee to a large wharf-boat (or "cradle") and on and along said boat to the southwest end thereof, where said tracks connect with the tracks on the steam transfer ferry boat when it is in position.

On the east side of the easterly one of these two tracks built along the side of the levee from the main tracks to the boat, as aforesaid, there is a bank from three to four feet high, caused by digging down the dirt from the levee on the east side which slopes down west to the river, to make a proper road-bed for the tracks. Plaintiff's evidence shows that Joseph F. Newland, the deceased, on the 19th day of October, 1891, was a carpenter in the service of appellant, and at the time of the injury was engaged in the discharge of his duty near the top of the hill, 200 yards northeast from the wharf-boat, constructing a wooden trough or drain across underneath these tracks, to drain the water through under them, west to the river from the grounds and main tracks east. The declaration alleges that while so engaged, and while exercising all due care and diligence, defendant's engineer, in charge of its engine and freight cars, negligently and carelessly ran said engine with great force and violence against and upon said Joseph F. Newland, thereby inflicting upon him such injuries to his leg and body that he died from said injuries. The declaration also avers that the engine was run at an unlawful rate of speed. There was evidence to show the speed was eight miles an hour, while the limit of the ordinance was six miles. It is also averred the bell was not rung or whistle sounded. The evidence sustained this averment. The evidence also showed the deceased had worked in those yards, where engines were almost continuously moving, for a number of months. He had been working on this particular job the day before the injury and all the morning before the accident, during which time the engine and cars were being frequently run over that part of the track.

East St. Louis Connecting Ry. Co. v. Eggmann.

It is quite evident the deceased was entirely familiar with the movement of the cars, which were operated not on any time table, but as occasion required. If it is conceded, in view of these facts, that appellant owed the duty to the deceased to give signals at all places along its tracks when running cars, the serious question still remains, whether the evidence sustains the averment of the declaration above quoted.

There were only two witnesses testified who saw the accident, William Reed and Owen Tinelin. The deposition of the former was taken by the appellee, which tended to show that Newland was struck by the engine while at work and without warning from the engine. He also states that Newland was nailing on a board just before he was struck. The appellant made Reed its witness. He testified that a Mr. Little was helping Newland, and when he—Little—heard the engine coming up the hill, he gave Newland warning, at which time he was clear of the engine. He had hold of the rods that run up and down the safety switch. When Little called to him, he turned around and slid down the trough against the engine. The other witness, Tinelin, testified that he was engineer on the engine that caused Newland's injury; that he ran it up and down that incline eight or nine times that morning; says he was constantly on the lookout; saw Newland and Little get out of the way when twenty or thirty feet away from them, then when within about five or six feet away from Newland, he seemed to lose his hold, turn, slip and fall down far enough for the beam of the engine to catch him in the hip and knock him down. He further said Newland had gotten out of the way every time he had passed that morning; that there was plenty of room—six or eight feet—with rods running to the safety switch all along down the hill. He also stated that Newland was out of the way, and there was no necessity to give him warning; that he did not get in the way until the engine got within six or eight feet of him. Without further comment, we do not consider the evidence sustains the judgment, and therefore reverse and remand the cause.