## The Chicago, B. & Q. R. R. Co. v. William Pollock.

1. HIGHWAYS—*Rights of Persons Walking Upon.*—A person walking upon a highway is entitled to the benefit of the statute requiring signals to be given by engines and trains approaching highway crossings.

2. SAME—*Rights of an Employe Upon His Employer's Grounds on His Way to Work.*—Where a person is upon his employer's grounds on his way to his work, outside the limits of a street, but within the limits of a city, he is entitled to the benefit of an ordinance of said city limiting the speed of freight trains.

3. WAIVER—*Of the Misconduct of a Juror.*—Misconduct of a juror, relied upon as ground for a new trial in the court below, is waived if not argued here.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Henry County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed February 13, 1901.

CHARLES K. LADD, attorney for appellant.

ALEXANDER McLEAN and N. F. ANDERSON, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

A switch track turns off from appellant's main track in the city of Kewanee, and extends in a westerly direction toward the yards of the Western Tube Company, a manufacturing concern. Before reaching those yards, it divides into two switch tracks, each of which crosses Walnut street in said city, and enters said yards through gates in a high

board fence. The most southerly of these switch tracks again divides into two tracks inside said yards, and these again each divide into three tracks. At the point where the most southerly of the two tracks leaves Walnut street and enters said yards, the fence seems to be slightly west of the west line of the street. On October 4, 1899, appellee came from north of said main tracks, crossed the main tracks, and the most northerly of the two switch tracks, and went south either on or near Walnut street. He had just stepped upon the south switch track, or had just set one foot over the rail, when he discovered an engine just upon him backing out of the yard. He apparently jumped or sought to get off the track. His leg was struck by the foot board, and his leg and ankle were broken. The engine was hauling two freight cars. Appellee brought this suit against appellant to recover damages for this injury. The first count of the declaration alleged that appellant, by its servants, so negligently, carelessly, recklessly and improperly drove and managed said locomotive engine that by and through the negligence and improper conduct of defendant by its servants in that behalf the engine struck plaintiff with great force and inflicted the injuries. The second charged the defendant drove the engine across a public highway without ringing a bell or sounding a whistle as required by law, by means of which the engine struck plaintiff. The third count set up an ordinance of said city limiting the speed of engines drawing freight trains to six miles per hour; and averred that the engine which struck plaintiff was drawing freight cars, and was running at a speed greatly in excess of six miles per hour, and also was not giving the statutory signals. It also set up the fact of the high board fence, and of high piles of scrap iron inside said yards, obstructing the approach of said engine and cars from the view of plaintiff; and that by reason of the premises, plaintiff was struck and injured. Each count averred plaintiff was exercising due care for his own safety, and described his injuries, and stated that at the time of his injury he was an iron worker and was earning wages at the rate of $5.50 per day, and

that he had spent a large sum, to wit, $500, in surgical and medical attendance, care and nursing, and that his injuries were permanent, and he was unable to do any manual labor. Defendant pleaded not guilty. There was a trial and a verdict and a judgment for $5,000, from which defendant appeals.

While there is slight evidence that plaintiff was west of the west line of Walnut street when he was struck, yet the overwhelming weight of the proof is that he was upon and within the limits of Walnut street. If he was upon Walnut street when struck, he was entitled to the benefit of the statute requiring signals to be given by engines and trains approaching highway crossings. If he was not in Walnut street, still he was an employe of the Western Tube Company on his way to his work, and was entitled to the benefit of the ordinance of Kewanee limiting freight trains to the speed of six miles per hour. (Illinois Central R. R. Co. v. Gilbert, 157 Ill. 354; St. L., A. & T. H. R. R. Co. v. Eggmann, 161 Ill. 155; E. St. L. C. R. Co. v. Eggmann, 71 Ill. App. 32.) There was proof that the engine, at the time it struck plaintiff, was running backward at a speed greatly exceeding six miles per hour, and other proof offered by defendant that it was moving only three miles per hour. The question whether said engine was running at a speed exceeding the rate restricted by ordinance was one of fact for the jury. The number of witnesses who testified the speed greatly exceeded six miles per hour is much greater than of those who testified for defendant that it was but three miles per hour. The engine was going down grade, and it was specially constructed to take up speed quickly. It had finished its duty in that yard and was returning to the main track. The engineer, a witness for the defendant, admits that he saw the plaintiff standing, as he claims, upon the track, quite a distance ahead of him, and looking away from the engine, and at a time when, if the engine was going only three miles per hour (that is at the rate at which an ordinary man walks), it is apparent he could, with perfect ease, have stopped it before he reached the plaintiff. It

would seem, from the testimony of the engineer, either that
he was going at a speed much greater than three miles per
hour, or else that he was negligent in not stopping when he
saw the plaintiff upon the track ahead of him, looking in
another direction. Upon a consideration of the entire evi-
dence upon this subject, we do not feel warranted in dis-
turbing the conclusion of the jury, approved by the trial
judge. There was also conflicting testimony as to whether
a bell was rung or a whistle sounded, and whether plaintiff
was exercising due care for his own safety, and upon these
questions of fact, also, we do not feel warranted in disturb-
ing the verdict.

It is argued there is no proof that defendant was operat-
ing the engine. Without referring to the testimony offered
by the plaintiff bearing upon that subject, we find that the
engineer in charge of the engine at that time testified for
defendant that he had been an engineer for defendant ten
years; that the fireman upon that engine at that time testi-
fied that he was a fireman on switch engine 1470 of the C., B.
& Q. railroad, and that he had been firing for that engineer
two years; that a switchman testified that at the time
of this injury he was on that engine 1470 of the Chicago,
Burlington and Quincy Railroad Company; that another
switchman testified that he at that time was working for
the C., B. & Q. in Kewanee, on engine 1470, and that he
worked for the C., B. & Q. till the first of the following
January; and that there is other like testimony in the
record.

It is claimed the damages are excessive. The proof is
that plaintiff was earning eight dollars per day and paying
therefrom a helper, so that he netted about $5.50 per day,
or fifteen hundred dollars a year and upwards. The
charges of his physicians and surgeons are five hundred dol-
lars, and are proven to be reasonable. He was laid up for
a long period of time and suffered great pain. He has, so
far, been unable to work since the accident. We are unable
to say the damages are excessive.

So far as the instructions have been discussed, we find no

serious error in them.   The misconduct of a juror was set out in the motion for a new trial as one of the reasons why a new trial should be awarded, and numerous affidavits upon that subject were presented to the court below, but this matter has not been argued by appellant here, and must therefore be considered waived.   We find no error in the record which would warrant a reversal of the judgment, and it is therefore affirmed.